## Altja R. Heeren
### v.
## William Kitson et al.

*Fraudulent Conveyances—Bill to Set Aside—Father and Son—Wages —Express Contract—Preference between Creditors—Amendment—Sec. 57, Chap. 22, R. S.—Sworn Answers.*

1. Upon a bill to set aside an alleged fraudulent deed and a mortgage executed from a father to his son, it is *held:* That the father, being lawfully indebted to his son, might pay him in preference to other creditors; and that, while the testimony creates strong suspicion against the good faith of the transaction, it does not overcome the sworn answers.

2. In this State bills, answers and replications may be amended, at any stage of the proceedings, on such terms as the court may impose.

3. Where the bill of complaint against two defendants calls for answers under oath, each answer must be overcome by at least two witnesses, or what is equivalent to the testimony of two witnesses.

[Opinion filed December 8, 1888.]

APPEAL from the County Court of Rock Island County; the Hon. John J. Glenn, Judge, presiding.

Messrs. Johnston & Johnston, for appellant.

Fraud is rarely perpetrated openly and in broad daylight. The proof is very seldom perfect and direct, but is dependent

upon very many little circumstances and conclusions to be drawn from the general aspect of the case. A resort to presumptive evidence becomes absolutely necessary to protect the rights of honest men from this as from other invasions. Again, it is said that direct evidence of witnesses speaking of their own knowledge of fraudulent intent, is not required. It is sufficient to prove facts and circumstances strong enough to justify a jury in finding such an intent. And, again, nor is clear and indisputable evidence required to establish fraud. Newman v. Cordell, 43 Barb. (N. Y.) 448 and 461; Kaine v. Weigley, 22 Pa. St. 183; Babcock v. Eckler, 24 N. Y. 632; Gill v. Crosby, 63 Ill. 190; Bowden v. Bowden, 75 Ill. 143; Carter v. Gunnels, 67 Ill. 270.

In Wait on Fraudulent Conveyances and Creditor's Bills, section 241, page 332, the author gathers a few of the *indicia* or badges of fraud, of which we believe the following to be present in this case:

*First.* The absence of memoranda or of any record of the consideration. Hubbard v. Allen, 59 Ala. 300.

*Second.* No agreement as to the exact terms of settlement. Lawson v. Funk, 108 Ill. 502.

*Third.* A false admission of the receipt of the consideration. Baltimore & Ohio R. R. Co. v. Hoge, 34 Pa. St. 214.

*Fourth.* Unusual clauses in the instrument. In this case the reservation of the right of homestead was made simply and solely to harass, hinder and delay the complainant. Pilling v. Otis, 13 Wis. 496.

*Fifth.* A sale not conducted in the usual and ordinary course of business. State ex rel. Pierce v. Merritt, 70 Mo. 283.

*Sixth.* Conduct of the parties which is exceptional and peculiar. The only cases ever heard of where parties have conducted themselves as these parties are shown to have done, claiming what these parties claim, are those cases similar to this where such a claim as this is invented, and set up as a consideration for a deed made to hinder, delay and defraud creditors. And in every similar case the court has placed such a construction upon it. Haney et al. v. Nugent et al., 13 Wis.

290; Gardinier v. Otis et al., 13 Wis. 460; Brinks v. Heise, 84 Pa. St. 253; Lawson v. Funk, 108 Ill. 502; Marshall v. Green, Ex'r, 24 Ark. 419; Glenn v. Glenn, 17 Iowa, 498.

*Seventh.* Absence of authentic evidence of indebtedness considerable in amount. There was here no such evidence. Newman v. Cordell, 43 Barb. (N. Y.) 461; Embury v. Klemm, 30 N. J. 523; Brinks v. Heise, 84 Pa. St. 253.

*Eighth.* Contradictory and irreconcilable accounts of the transaction given by vendor and vendee. Haney v. Nugent, 13 Wis. 290; Marshall v. Green, 24 Ark. 419.

*Ninth.* Absence of means in the vendee. Stevens v. Dillman, 86 Ill. 233; Embury v. Klemm, 30 N. J. Eq. 523.

*Tenth.* Absence of the evidence supposed to be within reach of the party charged with the fraudulent act. Henderson v. Henderson, 55 Mo. 559.

*Eleventh.* Neglect to testify.

In this case, William Kitson, one of the defendants, although present at the hearing, and although his evidence might have served to explain and make clear many of the inconsistencies in their defense, neglects to testify; and the language of the court in Bowden v. Johnson, 107 U. S. 262, seems to apply with great force. "The omission of Johnson to testify as a witness for himself, in reply to the evidence against him, is of great weight." Henderson v. Henderson, 55 Mo. 559; Bump on Fraud. Con., page 95; Goshorn's Ex'r v. Snodgrass et al., 17 W. Va. 770; Glenn v. Glenn et al., 17 Iowa, 498.

*Twelfth.* Relationship of the parties when the transfer covers the debtor's entire estate and other badges accompany it.

It is true that the mere fact of relationship will not of itself defeat a conveyance otherwise made in good faith, but where a transaction is so surrounded and marked with suspicious circumstances and badges of fraud as this one is, then the close relationship of the parties and the mutual dependency and desire to favor and protect each other, which must exist of very necessity, becomes the strongest badge of all. And the authorities are substantially in accord as to this fact. Reiger v. Davis, 67 N. C. 189; Embury v. Klemm, 30 N. J.

Eq. 523; Demarest v. Terhune, 18 N. J. Eq. 49; Haney v. Nugent et al., 13 Wis. 290; Lawson et al. v. Funk et al., 108 Ill. 502; Glenn v. Glenn, 17 Iowa, 498.

Messrs. SWEENEY & WALKER, for appellee.

It is asserted on behalf of the appellant, that it is not necessary that there be "clear and indisputable evidence to establish fraud." This, however, is not, we think, an accurate statement of the law. It is true that the evidence need not be indisputable in the sense that it must be irresistible, yet it must be very clear and satisfactory, and sufficient to produce a conviction. Bump on Fraudulent Conveyances, 603; Schroeder v. Walsh, 120 Ill. 403-409.

The cases cited by counsel, from this State, only go to this extent. Mr. Bump, in his work on Fraudulent Conveyances, on page 603, says: "While the law abhors fraud, it is unwilling to impute it on slight or trivial evidence, and thereby cast an unjust reproach upon the character of the parties. 44 Ill. 218. Such an imputation is grave in its character, and it can only be sustained on satisfactory proof." And, after discussing the questions further, says the test is "its sufficiency to satisfy the mind and conscience, and produce a satisfactory conviction or belief. 67 Ill. 270. The proof, however, must be satisfactory. It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts, from which a legitimate inference of a fraudulent intent may be drawn. * * * As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no presumption existed."

In the case of Schröeder v. Walsh, *supra*, our Supreme Court quotes this language, and on page 409 say: "This court has frequently held that the evidence must be clear and satisfactory to establish fraud."

Counsel do not pretend to claim that such a contract is void. They admit it to be valid if made, but claim the relationship, etc., stamp it as a fraud. On the contrary, we insist that the

fact of relationship does not, under the proof here, have any bearing upon the contract. Nelson v. Smith, 28 Ill. 495; Schroeder v. Walsh, 120 Ill. 411.

Our Supreme Court, in the case of Freeman v. Freeman, 65 Ill. 106, went much further than in the present case and allowed a son to recover for work done for his father for several years after he became of age, under an implied contract.

The case of Ginders v. Ginders, 21 Ill. App. 522, decided by this court, sustains the contract in question here. In the case of Hayden v. Henderson, 21 Ill. App. 299, the court likewise sustained a recovery upon an implied contract.

The law always presumes persons are honest, and when the circumstances proven can exist consistently with an honest intent, then the transaction must be upheld. Mey v. Gulliman, Adm'x, 105 Ill. 285; Schroeder v. Walsh, 120 Ill. 410; Cornell v. Gibson (Ind.), 16 N. E. Rep. 131; Jackson v. Badger (N. Y.), 16 N. E. Rep. 208.

C. B. Smith, J.  This was a bill filed by Altja R. Heeren against William and John F. Kitson and S. B. Stoddard for the purpose of setting aside an alleged fraudulent deed made by William Kitson and his wife to their son, John F. Kitson, and also to set aside a mortgage by the Kitsons to Stoddard on the same date of the deed and which was also alleged to be fraudulent.

On February 12, 1886, complainant recovered a judgment against William Kitson and one C. M. Moody for $980 and costs in the Circuit Court of Rock Island county. An execution was duly issued on this judgment and placed in the hands of the sheriff, but nothing was made, and nothing found in the hands of the judgment debtors out of which to make the judgment or any part of it. The insolvency of Moody is admitted.

The bill alleges that prior to the rendition of the said judgment, William Kitson was the owner in fee simple of the south half of the southeast quarter of section 15 and the north-west quarter of northeast quarter of section 22, town 18 north, range 2 east, in Rock Island county, and it further alleges that

prior to the rendition of the judgment, but after the indebtedness on which judgment was rendered had accrued, viz., on the 13th day of February, 1885, the said William Kitson made a pretended deed in fee simple for said premises to John F. Kitson for the expressed consideration of $2,400, and that in said deed William Kitson reserved his homestead interest. The bill charges that this deed was a mere sham and fraudulent, and made for the purpose of preventing complainant from making her judgment out of the land, and charges that there was in fact no consideration for such conveyance from the son to his father, and charges that John F. Kitson was a man of no pecuniary responsibility and possessed of little or no property other than the land so fraudulently conveyed to him by his father, and charges that William Kitson has no property in his name out of which the judgment can be made; that payment of the execution has been demanded by the sheriff and refused by William Kitson and that he pretends he has no property.

The allegation that the mortgage was fraudulent was abandoned on the trial by the complainant. The oath of defendants to the bill was not waived, and, in addition to a general answer, the defendants were required to answer the following interrogatories, viz.:

1st. Whether the sum named as a consideration in said deed, dated February 13, 1885, was actually paid by said John F. Kitson to said William Kitson?

2d. If any part of said sum was paid, what part, in what way, in what amounts, and when was it paid?

3d. How, when and from what sources the said John F. Kitson obtained the money paid on said deed, if any was paid?

4th. The true purpose and intent of said deed and conveyance of said real estate from said William Kitson to said John F. Kitson?

5th. How much money, if any, was actually paid by the said Simeon B. Stoddard to the said William Kitson for the said mortgage?

6th. The true purpose and intent of the said mortgage?

The bill prayed that the deed and mortgage be set aside as fraudulent.

The defendants, John F. and William Kitson, deny specifically every fraudulent allegation in the bill, and allege that on the 13th day of February, 1885, William Kitson was indebted to John F. Kitson in the sum of $2,400 for services rendered before that time at his request, and that to satisfy that debt, and in the further consideration that John F. Kitson woulu pay off the $500 mortgage due to Stoddard on said land, the deed was made to said John F. Kitson, and not for any other consideration whatever, and that said deed was a real, actual and *bona fide* conveyance of said land, and was not made by defendants or either of them with intent to defraud complainant or any other creditor of complainant. The answer also states that John F. Kitson in fact paid said mortgage and released it from the land and gave his own note instead thereof, and to secure it gave another mortgage on the same land signed by himself, his father and May Kitson.

In addition to the foregoing answer John F. and William Kitson each for himself made answer to the interrogatories a.; follows:

"As to said first interrogatory: that said sum named as the consideration in said deed, dated February 13, A. D. 1885, was actually paid by this defendant, John F. Kitson, to said Wm. Kitson in services and labor before that time rendered by the said John F. Kitson for the said William Kitson at his request.

"As to said second interrogatory: that all of said sum was paid as stated in our answer to first interrogatory, in the manner and at the time therein stated, and previous to the delivery of said deed.

"As to said third interrogatory: that the said John F. Kitson obtained said money by means of his own personal efforts and labor performed, laid out and expended by him as laborer and manager of the farm of the said William Kitson, upon and in connection with the land in said bill described.

"As to the fourth interrogatory: that the true purpose and intent of said deed was to pay a *bona fide* debt which this defendant, William Kitson, thus owed to this defendant, John F. Kitson, and was not given for any other or different purpose or intent.

" As to said fifth interrogatory: that the said defendant, Simeon B. Stoddard, on or about the 13th day of February, 1878, paid to the said William Kitson the sum of $700 in cash, as the sole and only consideration for the note and mortgage given of that date, which was duly recorded in the recorder's office of said Rock Island county, in Book 27 of Mortgages, on page 127, and that the mortgage referred to in said interrogatories was given for the purpose of paying or discharging $500, the same being the balance due on said first-mentioned mortgage; and that said first mortgage was never paid in any other or different manner, except $200 of the principal thereof, which was paid by this defendant, William Kitson, on February 15, 1882.

" As to the said sixth interrogatory : that the true intent and purpose of said mortgage referred to in said interrogatory was to pay and discharge said balance of $500 remaining due to said defendant, Stoddard, upon said first mortgage and to procure the surrender to this defendant, William Kitson, of his said note secured by said first mortgage and dated February 13, 1878, and to procure for this defendant, John F. Kitson, an extension of the time of payment of said $500, a part of the money loaned by said Simeon B. Stoddard on the date of the said first mortgage, which this defendant, John F. Kitson, assumed as a part of the consideration for the conveyance of said land to him by the said William Kitson.

" And these defendants, further answering, say: that said complainant is not entitled to the appointment of a receiver as prayed for in said bill.

" And these defendants, further answering, deny that the complainant is entitled to the relief, or any part thereof, in the said bill of complaint demanded, and pray the same advantage of this answer as if they had pleaded or demurred to the said bill of complaint, and that they may be dismissed with their reasonable costs and charges, in this behalf most wrongfully sustained.

" WILLIAM KITSON,<br>" JOHN F. KITSON."

The answer and the answer to the interrogatories were

sworn to.   Exceptions were filed to the answer and sustained. Complainant amended her bill, and defendants were required to answer the amended bill and also to amend their answer.

The amended answer of the Kitsons set up that John F. Kitson became of age on the 27th of February, 1875, and that the father was sixty-three years of age at that time, and in feeble health and unable to work on or manage his farm; that John was his only son, and that he then proposed to go and work for himself; that it was then agreed between the father and son that, if the son would stay at home and work and manage the farm, he should be paid as much for his work as any other man would give him, and that he would pay him $20 per month for his work from the time he became of age, and that thereupon John accepted such proposition and continued so to work for his father and manage the farm, until the 13th day of February, 1885, the date of the execution and delivery of the deed, and that said William Kitson never paid his son any portion of the amount he so agreed to pay him for his services, except enough to clothe him and occasionally a dollar or less, at infrequent times, for his spending money, not exceeding $30 per year, and that, at the date of said deed, there was then actually due John F. Kitson from his father under the terms of the contract the sum of $2,400.

Replications were filed to the answer and the cause referred to the master, who took the evidence and reported it back. Upon the hearing the Circuit Court found both the deed from William Kitson to John F. Kitson, and the mortgage from the Kitsons to Stoddard valid instruments and free from fraud, and dismissed the bill.

We have carefully studied the evidence in this record and can not say that the court erred in finding as it did.   The complainant saw fit to call for answers under oath, and thus gave the defendants the advantage of two sworn answers which must each be overcome by at least two witnesses, or what is equivalent to the testimony of two witnesses.

While the testimony on behalf of the complainant creates a strong suspicion against the good faith of the transaction, we think it fails to overcome the sworn facts set up in the

answer and amended answer. The evidence discloses a pref-
erence between two creditors by William Kitson, rather than
a fraudulent conveyance to one not his creditor. From the
evidence he was as much bound legally and morally to pay
his son for his ten years' unpaid labor, as he was to discharge
the debt of complainant, and he evidently and in good faith
regarded his obligation to pay his son greater than his obliga-
tion to pay complainant's judgment, for which he was but a
security on the note. While he was as much legally bound to
pay the one as the other, still we do not think, under the evi-
dence, that because he chose first to pay his son, although it
took all he had, this justifies the charge that in doing so he was
guilty of a fraud. Nor was there any fraud on the part of
the son in attempting to secure his debt. The fact that his
father was his debtor furnished no sufficient reason why he
should not insist on payment even to the exclusion of others,
if there was no more than enough to pay him. There is no
doubt that John F. Kitson did remain at home substantially
all the time after he became of age and worked on his father's
farm and managed it for him for about ten years.

This time belonged to him and he was as much entitled to
be paid for it as the complainant was to have her judgment
paid. Both father and son swear that this service was ren-
dered under the terms of an express contract and that the serv-
ice was rendered in pursuance of it, and that it has not been
paid for. There was, therefore, a valuab'e consideration for
the deed, and large enough to support it, in the absence of
proof to show that the land was worth more than the $2,400,
with the mortgage and homestead incumbrance added.

Appellant complains that the court erred in permitting
appellees to amend their answer and cited decisions of other
States and the general chancery practice of courts of equity.
This objection can have no force in this State under our
statute. Sec. 37, Chap. 22, Chancery Practice Act, expressly
confers on courts the power to allow amendments to bills,
answers and replications at any stage of the proceedings, on
such terms as the court may deem right.

But, aside from this statute, the complainant asked and

obtained leave to amend her bill, and took a rule on defendants to answer the amended bill. She can not now complain that this answer does not suit her, if it be in response to her amended bill. In this record we find no error and the decree is affirmed.

*Decree affirmed.*